UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY MULL,<br><br>          Plaintiff,<br><br>     v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[1]<br><br>          Defendant. | Case No. 1:24-cv-01503-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

On December 10, 2024, Plaintiff Larry Mull ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   FACTUAL BACKGROUND

On July 30, 2021, Plaintiff filed an application for SSI payments, alleging he became disabled on April 9, 2017. (Compl. ¶ 4).

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)

Plaintiff was born on April 7, 1969, and was 53 years old on the application date. (AR 94).

**A.     Relevant Medical Evidence**[3]

Plaintiff has had extensive medical evaluation, treatment, and care from numerous providers related to a myriad of complaints regarding his physical health.  He repeatedly alleged ongoing pain and functional limitations related to various conditions. (*See e.g.*, AR 864, 866–69 (pain); 821, 827, 832, 835, 864, 867, 870 (limited range of motion); and 691, 694, 698, 795, 798, 800, 802, 804, 806, 810, 813, 815 (abnormal gait)).

Plaintiff suffered a gunshot wound in his left thigh as a child, which resulted in large missing area of the underlying muscle and a variety of other complications. (*See* AR 425, 478, 815.)  He frequently reported pain in his left leg, (*see, e.g.*, AR 426); low back, (*see, e.g.*, AR 438, 864); right hip, (*see, e.g.*, AR 544); and right knee, (*see, e.g.*, *id.*).  He also experienced recurrent cellulitis of his leg, (*see* AR 425); left leg swelling with erythema, (*see* AR 426); a left leg limp, (*see* AR 815); decreased range of motion in his left knee, (*see* AR 810); pain with range of motion in his right hip and both knees, (*see* AR 815); joint swelling, (*see* AR 438); myalgias, (*see id.*); tenderness and decreased range of motion in his lumbar spine, (*see* AR 867); atrophy in his left hip and thigh, (*see id.*); and carpal tunnel syndrome, (*see* AR 691).

In 2019, Plaintiff was hospitalized for a bout of his recurrent cellulitis. (*See* AR 425.)  After he was discharged, he attended a follow-up appointment in which doctors noted Plaintiff's ongoing leg pain, but also that "[t]he patient is currently otherwise doing well without any complaints or pain." (AR 382).  And during a visit to Kern Valley Medical Center that same year, Plaintiff reported experiencing "leg pain" that is "a chronic problem" that "occurs constantly" and is "unchanged" since its onset a year prior. (AR 437.)  During that visit, doctors also noted that his "associated symptoms include joint swelling, myalgias, and swollen glands" and that Plaintiff reported that "treatment has provided no relief." (*Id.*)

In 2022, Plaintiff sought medical attention from the Sienna Wellness Institute for ingrown toenails and an associated concern about a fungus that was turning his toes black. (*See* AR 720).  He continued seeking care for this concern for about a year. (*See* AR 708–23.)

---

[3] The Court has also omitted discussion of facts not relevant to its holding.

In 2023, Plaintiff received medical care from the California Neurology Institute for ongoing symptoms related to carpal tunnel syndrome. (AR 690–707.) Despite compliance with wrist bracing and a referral to physical therapy, Plaintiff reported "continu[ing] to have numbness and tingling of his upper extremities," "minimal relief" from the bracing, and that physical therapy "mad[e] his symptoms worse." (AR 697). Also in 2023, during a visit with the Pain Institute of Central California, Plaintiff reported "[t]enderness in the midline at L4 – moderate, at L5 – moderate" and records reflect that "patient ha[d] decreased range of motion with respect to flexion and extension . . . [t]he range of motion is causing the patient to have increased pain." (AR 864.) Those records also note that Plaintiff experienced "aggravated symptoms with exertional activities, such as prolonged standing, prolonged sitting, walking long distances, lifting, bending and getting up from a bent position." (AR 864.)

Plaintiff's records include some normal findings as well as more specific examination results and reports that tend to color and contextualize those "normal" findings. (*See, e.g.* AR 438 (noting "normal gait" and "normal strength" but also including statements that Plaintiff's musculoskeletal symptoms were "[p]ositive for back pain, joint swelling and myalgias" and that in his "left upper leg," he "exhibit[ed] tenderness, swelling and edema").)

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on July 29, 2022, and again on reconsideration on January 11, 2023. (AR 94–113, 115–36.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 150.) On January 17, 2024, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 36–54.)

Plaintiff testified that he worked as a tile setter until 2017, at which point he stopped working because "he had a gunshot wound to the left side and it was just too much weight, [he] couldn't bend over and pick stuff up or do things and [his] boss ended up firing [him] because of his disability." (AR 42.) The ALJ inquired why Plaintiff stopped work sixteen years after he had suffered the injury, to which Plaintiff explained, "I was taking a bunch of pills and stuff so [he] could get through the pain of working but after a while there were side effects," and "once he quit [the medication] then

3

things started really hurting where [he] could not physically do what [he] was supposed to be doing." (*Id.*) Plaintiff continued to explain that while he was working, he did have some trouble picking things up and bending over. (AR 43.) He also noted that he had hurt his back while working. (AR 43–44.)

In response to the ALJ's inquiry as to what "symptoms" or "difficulties" precluded him from working, Plaintiff responded, "my left thigh, my lower back, my upper neck, C4, 5, and 6, and then just great pain." (AR 45.) He also explained that "[t]he C4, 5, and 6 in [his] neck is pinching a nerve, so [his] left arm goes numb to where [he] can't do anything with it." (*Id.*)

A vocational expert ("VE") also testified at the hearing. (AR 305–07.)

**C.     The ALJ's Decision**

In a decision dated March 15, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–29.)

In that decision, the ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 19–29.). The ALJ decided that Plaintiff had not engaged in substantial gainful between Plaintiff's alleged onset date, April 9, 2017, through his last insured date, December 31, 2022 (Step One). (AR 20). At Step Two, the ALJ found Plaintiff's following impairments to be severe: obesity, osteoarthritis, degenerative disc disease of the lumbar, bilateral carpal tunnel syndrome, hepatitis C, gunshot wound of left leg, affective disorder, anxiety disorder, and substance use disorder. (*Id.*) The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (Step Three). (AR 20–27.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b), except he is capable of occasional pushing or pulling with the left leg, occasional climbing of ramps or stairs, and never climbing of ladders, ropes or scaffolds. He was capable of occasional stooping, occasional kneeling, occasional crouching, and occasional crawling. He could work where there is no hazards such as dangerous moving machinery or unprotected heights. He is capable of understanding and remembering simple and detailed, but not complex, instructions. He is capable of performing simple and repetitive tasks, and he can perform work, that once assigned, should be performed primarily alone, without working in coordination with other employees, and does not require constant supervision. He can tolerate occasional and superficial contact with the public. He is capable of occupations that can be performed by someone using a cane to ambulate away from the work station.

(AR 22.) Although the ALJ recognized that "the record reflects the claimant's history of obesity, osteoarthritis, degenerative disc disease of the lumber, hepatitis C, status post gunshot wound of the left leg, affective disorder, anxiety disorder, and substance abuse," (AR 22–23), the ALJ determined that "the weight of the objective evidence does not support the claimant's claims of disabling limitations to the degree alleged," (AR 23.)

The ALJ next made the following findings: Plaintiff (1) could no longer perform any past relevant work; (2) fell into the category of "a younger individual" at the time the application was filed but had changed age category since that time to "closely approaching advanced age;" and (3) had a limited education (Step Four). (AR 27.) In light of those findings along with the ALJ's determination of Plaintiff's RFC, the ALJ further found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" (Step Five)—routing clerk, sorter, and small parts assembler. (AR 28.)

**D.    Review of the ALJ's Decision**

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 31, 2024. (AR 1–3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481. On December 10, 2024, Plaintiff filed a Complaint in the U.S. District Court seeking judicial review of the Commissioner's final decision. (Doc. 1.)

### III.  LEGAL STANDARD

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

"However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

        1.     <u>Review of an ALJ's Findings for Substantial Evidence</u>

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

        2.     <u>Review of an ALJ's Credibility Determination</u>

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### IV.   DISCUSSION

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's testimony. (Doc. 11 at 6–14.) The Commissioner does not contest that Plaintiff produced objective evidence of his impairments and that those impairments could reasonably be expected to

produce some degree of impairment, (*see* Doc. 12 at 3–4). Instead, Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (*Id.* at 3–8.) Because the there is no dispute that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and there is no allegation of malingering, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for the ALJ's adverse credibility finding. *Vasquez*, 572 F.3d at 591; *see also Herbert v. Astrue*, No. 1:07-CV-01016 TAG, 2008 WL 4490024, at *14 (E.D. Cal. Sept. 30, 2008).

The Court agrees with Plaintiff that the ALJ improperly discredited his subjective symptom statements with respect to his reports of physical limitations and will remand for further proceedings.[5]

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, the lack of supporting objective medical evidence cannot be the "sole basis for discounting [subjective symptom] testimony." *Burch*, 400 F.3d at 681; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Therefore, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Importantly,

---

[5] Because further proceedings will necessitate the re-evaluation of Plaintiff's symptom statements as a whole, the Court does not reach the issue of the ALJ's treatment of Plaintiff's allegations of mental impairments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

an ALJ must explain *how* the medical evidence is inconsistent with a plaintiff's reported symptoms and limitations, *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015), and may not "cherry-pick" medical evidence that favors disability without considering its context in the record, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).  Further, throughout their analysis, an ALJ must consider the record as a whole, evaluating the evidence in context.  *See Nadya I. v. Saul*, No. 19-CV-04373-TSH, 2020 WL 5232529, at *14 (N.D. Cal. Sept. 2, 2020).

The ALJ began their analysis as to Plaintiff's reported symptoms with the statement "in terms of the claimant's alleged disabling impairments, the record fails to document any objective clinical findings that the claimant was not able to pursue normal childhood activity in light of the reports of the treating and examining practitioners and the findings made upon examination."  (AR 23).  The relevance of Plaintiff's lack of symptoms in his childhood is unclear given that Plaintiff alleges his disability onset date was when he was forty-eight.  (*See* Compl. ¶ 4.)

The ALJ went on to acknowledge "the claimant's history of obesity, osteoarthrosis, degenerative disc disease of the lumbar, hepatitis C, status post gunshot wound of the left leg, affective disorder, anxiety disorder, and substance abuse."  (AR 23.)  However, the ALJ then determined that "the weight of the objective evidence does not support the claimant's claims of disabling limitations to the degree allowed."  (AR 24.)  Because the lack of affirmative confirming evidence alone cannot be a reason to discount Plaintiff's subjective complaints, the Court must determine whether the inconsistencies identified by the ALJ constitute clear and convincing reasons for discounting Plaintiff's statements as to his physical limitations.  A careful review of the record reveals that the evidence on which the ALJ relied was impermissibly "cherry-picked," *Ghanim*, 763 F.3d at 1164, or otherwise taken out of context, *see Holohan*, 246 F.3d at 1205.[6]

In the first relevant paragraph in which the ALJ purported to "consider the claimant's physical impairments," the ALJ contrasted the claimant's reports—specifically "left leg and low back pain, right hip and knee pain, recurrent cellulitis of the left lower leg, left leg swelling and pain,

---

[6] The ALJ's assessment of Plaintiff's credibility is not particularly logically or thematically organized.  Therefore, the Court's review will track the relevant paragraphs of the ALJ's analysis of Plaintiff's subjective complaints as to his physical health and associated limitations.

10

joint pain, joint swelling and myalgias, numbness to all finger of the left hand as well as weakness of the right hand with associated object drop, and neck pain" (AR 24 (citing AR 425–36, 438–39, 478, 544, 864)), and "aggravated symptoms with exertional activities, such as prolonged standing, prolonged sitting, walking long distances, lifting, bending and getting up from a bent position," (*id.* (citing AR 864))—with Plaintiff's reports that he was "doing well without any complaints of pain, getting better," as well as his denial of "generalized weakness in lower extremities," (*id.* (citing AR 382, 713)). But the two pages of the record that purportedly undermined Plaintiff's credibility as to his reports of leg, back, hip, knee, finger and hand issues is both cherry-picked and taken out of context.

Starting with the ALJ's first cite to the record, (AR 382), that medical record details an August 2019 follow-up after Plaintiff was hospitalized for cellulitis in his leg. (*See* AR 24 (citing AR 382)). That particular note reflects a finding that the Plaintiff's cellulitis had resolved and that "[t]he patient is currently otherwise doing well without any complaints or pain." (*Id.*) But that same page notes that Plaintiff had "ongoing" left leg pain and the fact that his cellulitis had resolved is not inconsistent with his alleged *recurrent* cellulitis. (*Id.*, *see also* AR 425 (noting Plaintiff has a history of "recurrent cellulitis").) Moreover, this citation is cherry-picked in light of the numerous records, many more recent than 2019, that support Plaintiff's contentions. (*See e.g.*, AR 864, 866–69, (pain); 821, 827, 832, 835, 864, 867, 870 (limited range of motion)).

The other citation to the record in this first paragraph, (AR 713), is also cherry-picked and taken out of context. (*See* AR 24 (citing AR 713)). This citation is to a record related to a follow up visit specially regarding a chief complaint of ingrown toenails and associated fungal concerns. (*See* AR 720–21 (original visit), 713 (follow up)). And while that record does include notes that "the patient . . . feels better" and that "patient denied generalized weakness in the lower extremities" it is clear from the context of the note that Plaintiff felt better *with regard to his toes*, which are not related to any of Plaintiff's alleged disabling conditions—let alone the specific reported symptoms at issue in this paragraph. (AR 713.) Further, denial of *generalized* weakness in his lower extremities is not inconsistent with Plaintiff's *specific* complaint regarding his left thigh stemming from his prior gunshot wound. And this same record details "cramping in the legs," "morning

11

stiffness in the joints," and "left leg pain," which is consistent with Plaintiff's complaints. (AR 713–14.)

Moving on to the next paragraph, the ALJ again drew a contrast between two long lists of somewhat unrelated individual pieces of medical evidence. The ALJ contrasted examination findings that Plaintiff was

> obese with old scarring over the lower anterior thigh with a defect, [and had] left lower extremity swelling with erythema above the ankle to below the knee, mild tenderness, left leg limp, decreased range of motion noted in the left knee, pain with range of motion in the right hip, left knee and right knee, missing large area of underlying muscle superior to knee due to well healed gunshot wound, lumbar spine tenderness, decreased range of motion of the lumbar spine, left hip/thigh atrophy in the anterior thigh and medial thigh,

(AR 24 (citing 426, 479, 545, 547, 691, 795, 797)), with "additional examination findings"

> not[ing] that claimant was in no acute distress with normal motor and sensory findings, normal deep tendon reflexes, normal strength, no atrophy, normal gait, normal looking skin of the left lower extremity, cellulitis has resolved, strength 5/5 in all muscle groups, and knee joint without bony abnormality,

(*id.* (citing AR 438, 690–91, 698, 713, 864)). This reasoning falls short of being clear and convincing for several reasons.

First, the alleged inconsistencies between these two lists of discrete findings are not readily apparent. For example, it is not clear how some of the second set of findings that purportedly undermine Plaintiff's claims are even relevant to the types of first set of findings that purportedly support Plaintiff's subjective complaints. For instance, it is not clear how "normal deep tendon reflexes" is related to the prior recitation of evidence. And because the analysis fails to (1) make clear the inconstancies between the two groups of evidence and then (2) tie any such inconsistency to a specific finding about a particular subjective complaint by Plaintiff, the Court cannot discern how this part of the analysis affects the ALJ's computation of Plaintiff's RFC.

Second, the record citations on which the ALJ relies to draw a contrast between the record and the Plaintiff's subjective complaints are again taken out of context and cherry-picked. For example, to support their finding that the examination evidence was inconsistent with Plaintiff's reported symptoms, the ALJ pointed to a record that reflected that Plaintiff had a "normal gait" and "normal strength." (AR 24 (citing AR 438).) But that same record also states (1) Plaintiff's

musculoskeletal symptoms were "[p]ositive for back pain, joint swelling and myalgias" and (2) as to his "left upper leg," he "exhibit[ed] tenderness, swelling and edema." (AR 438). The next page includes an "[a]ssessment" section that includes treatment plan information related to "[c]ellulitis of left leg," "[n]europathic pain of the left lower extremity," and "[g]unshot injury," (AR 439), which all support Plaintiff's contentions. This particular record also includes a note that details Plaintiff's subjective report of "leg pain" that is "a chronic problem" that "occurs constantly" and is "unchanged" since its onset a year prior. (AR 437.) The note continues by reflecting Plaintiff's report that "associated symptoms include joint swelling, myalgias, and swollen glands" and that "treatment has provided no relief." (*Id.*) Again, when viewed holistically and in context, these records do not undermine Plaintiff's subjective complaints highlighted in this paragraph of the ALJ's decision.

Similarly, ALJ pointed to another record reflecting that Plaintiff had "normal strength" and "normal gait." (AR 24 (citing AR 864).) This citation is more cherry-picking, as that the finding of "normal strength" was limited to Plaintiff's *right* leg. (AR 864.) Regarding Plaintiff's left leg, the primary leg associated with Plaintiff's complaints, the record states "[a]trophy present in anterior thigh," "present in medial thigh," and notes "[p]ain in left thigh." (*Id.*) This is in addition to the numerous notations in the record that note Plaintiff's abnormal gait. (*See, e.g.*, AR 691, 694, 698, 795, 798, 800, 802, 804, 806, 808, 810, 813, 815.) This record also supports Plaintiff's subjective complaints as to his back, as this record states "[t]enderness in the midline at L4 – moderate, at L5 – moderate" and that "patient has decreased range of motion with respect to flexion and extension . . . [t]he range of motion is causing the patient to have increased pain." (AR 864.)

A final example of the ALJ's mischaracterization of the record as to the so-called "normal findings," mirrors a previous discussion regarding a citation to records related to Plaintiff's treatment for ingrown toenails and associated fungal concerns. While these records do include some generic language involving "normal findings," (*see* AR 713 (noting that "Patient is in no apparent distress")), they are (1) primarily concerned with conditions not relevant to Plaintiff's alleged disabling conditions and (2) do reflect evidence that tends to support Plaintiff's complaints, (*see* AR 714 (noting Plaintiff's "left leg pain")).

13

Moving to the next paragraph, the ALJ misrepresents the record as to Plaintiff's history of carpal tunnel syndrome. While the ALJ states that "this condition was managed medically, with physical therapy and bilateral wrist braces," that is not an accurate representation of the record. (AR 24.) It is true that the record reflects that Plaintiff used wrist braces at the suggestion of his providers and was referred to physical therapy. (*See* AR 693.) But that same record also reflects that at his next visit, Plaintiff (1) reported "continu[ing] to have numbness and tingling of his upper extremities," (2) reported compliance with wrist bracing, but that bracing "provided minimal relief," and (3) detailed that Plaintiff would not continue with physical therapy because it "mad[e] his symptoms worse." (AR 697.) Although no further treatment was suggested, Plaintiff's condition was ultimately not managed with physical therapy, and Plaintiff did not experience relief from the limited treatment provided.

After several paragraphs in which the ALJ addressed Plaintiff's alleged disabling psychological symptoms, the ALJ turned back to discussing Plaintiff's reported physical symptoms and limitations with the statement, "[c]onsistent with the diagnostic findings and the residual functional capacity assessed in this decision, the claimant's objective clinical examinations have also failed to corroborate the full extent of the alleged severity, limiting effects, and frequency of his condition." (AR 25.) The ALJ nonetheless opined that "[w]hile the claimant has some positive findings, they are limited generally to tenderness, reflex changes, and decreased range of motion with respect to flexion and extension," (*id.* (citing AR 685, 688, 864, 867)), and Plaintiff's allegation that he "needed a cane while walking," (*id.* (citing 296)).[7] The ALJ then drew a contrast between the limited positive findings and Plaintiff's reports of needing a cane with evidence that "his primary care provider usually reported normal musculoskeletal range of motion, normal strength, normal muscle tone, normal gait, and no tenderness, deformity, or edema" supported only by broad and indiscriminate citations to the record. (*Id.* (citing AR 794–871.) But those records tell a different story than the one the ALJ represents. Those records reflect numerous findings of abnormal gait, (*see e.g.*, AR 795, 798, 800, 802, 804, 806, 808, 810, 813, 815, 845); abnormal musculoskeletal

---

[7] Because the ALJ nonetheless incorporated Plaintiff's use of a cane into the assessed RFC, any error as to Plaintiff's subjective allegations as to his need for a mobility device would be harmless. *See Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

range of motion, (*see e.g.*, AR 821, 827, 832, 835, 864, 867, 870); and tenderness, (*see, e.g.*, AR 821, 827, 832, 835, 867, 870).

In sum, without an indication of *which* symptoms or limitations the ALJ discredits and clear inconsistencies between the medical evidence recited and Plaintiff's reported symptoms and limitations, the ALJ's "path [cannot be] reasonably discerned." *Molina v. Astrue*, 674 F.3d 1112, 1121 (9th Cir. 2012); *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). Here the ALJ failed to adequately explain *how* the medical evidence is inconsistent with Plaintiff's reported symptoms and limitations, *see Brown-Hunter*, 806 F.3d at 493–94. Additionally, the reasoning the ALJ provides does not "have the power to convince," *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022), as the reasoning was tainted by "cherry-pick[ed]" medical evidence without considering its context in the record, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).[8]

## A.    Remand for Further Proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Plaintiff requests the matter be remanded for an immediate award of benefits, or, in the alternative, for further administrative proceedings. (Doc. 11 at 14.)

The ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective statements, which impacted the RFC determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy.[9] *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with

---

[8] The error is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Had the ALJ credited Plaintiff's statements related to Plaintiff's physical limitations—especially with regard to his allegations that he has difficulty with lifting, bending, standing, sitting, kneeling and walking— a more restrictive RFC may have been assessed and the disability determination may have been different. Thus, the error was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

[9] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to what Plaintiff's RFC should ultimately be because that is for the ALJ to decide. *Ford*, 950 F.3d at 1154.

15

sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints"). Thus, a remand for further proceedings to properly assess Plaintiff's subjective symptom statements is appropriate in this action.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Larry Mull and against Defendant Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 10, 2025**                    /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE